UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BENJILEI MENA,<br><br>  Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>  Defendant. | No. 1:15-CV-03129-JTR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF No. 12, 17. Attorney D. James Tree represents Benjilei Estelle Mena (Plaintiff); Special Assistant United States Attorney Daphne Banay represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 4. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed an application for Disability Insurance Benefits (DIB) on September 8, 2011, alleging disability since March 2, 2005, due to a back injury,

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

neck injury, posttraumatic stress disorder (PTSD), ankle injury, depression, agoraphobia, and memory loss. Tr. 206-212, 254, 258. The application was denied initially and upon reconsideration. Tr. 125-127, 134-138. Administrative Law Judge (ALJ) Larry Kennedy held a hearing on October 30, 2013, and heard testimony from Plaintiff and vocational expert Kimberly Mullinax. Tr. 42-91. At the hearing, Plaintiff was represented by counsel and requested that her onset date be amended to June 20, 2011. Tr. 47-48. The ALJ issued an unfavorable decision on November 22, 2013. Tr. 71-36. The Appeals Council denied review on May 22, 2015. Tr. 1-6. The ALJ's November 22, 2013, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on July 21, 2015. ECF No. 1.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 45 years old at the amended date of onset. Tr. 206. Plaintiff completed her GED in 1984 and was trained as a certified nursing assistant. Tr. 259, 462. Plaintiff's work history included home/personal health care and cashiering. Tr. 276-287. Plaintiff reported that she stopped working in October of 2007 because of her condition. Tr. 258.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v.*

*Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 404.1520(a)(4)(v).

## ADMINISTRATIVE DECISION

On November 22, 2015, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from the originally alleged onset date of March 2, 2005, through her date last insured of June 30, 2012. Tr. 19.

At step two, the ALJ determined Plaintiff had the following severe impairments: lumbar spine degenerative disc disease with radiculopathy, cervical spine degenerative disc disease, obesity, anxiety disorder with symptoms of panic and PTSD, and depressive disorder. Tr. 19.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 22.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined she could perform a range of light work with the following limitations:

> The claimant can lift up to twenty pounds occasionally and lift and/or carry up to ten pounds frequently; stand and/or walk about six hours in an eight-hour day with normal breaks; and sit for about six hours in an eight-hour day with normal breaks. She can occasionally balance, stoop, kneel, and crouch, and cannot crawl or climb ramps, stairs, ladders, ropes, or scaffolds. The claimant must avoid concentrated exposure to vibrations and hazards. The claimant can perform simple, routine tasks and follow short, simple instructions, she can perform work that needs little or no judgment, and perform simple duties that can be learned on the job in a short period. The claimant has average ability to perform sustained work activities (i.e. can maintain attention and concentration; persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e. eight hours a day, for five days a week, or an equivalent work schedule) within the customary tolerances of employers rules regarding sick leave and absence. She needs a work environment that is predictable and with infrequent work setting changes. The claimant also needs a work environment with minimal supervisor contact. (Minimal contact does not preclude all contact,

rather it means contact does not occur regularly. Minimal contact also does not preclude simple and superficial exchanges and does not preclude being in proximity to the supervisor). She can work in proximity to a few co-workers but not in a cooperative or team effort. She needs a work environment that requires minimal interactions with a few co-workers. The claimant would not deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process. Incidental contact of a superficial nature with the general public is not precluded.

Tr. 24-25. The ALJ identified Plaintiff's past relevant work as a nurse assistant and concluded that Plaintiff was not able to perform this work. Tr. 34.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of cleaner housekeeping, hand packager, and mail clerk. Tr. 35. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from March 2, 2005, the originally alleged date of onset, through June 30, 2012, the date Plaintiff was last insured for DIB. Tr. 36.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to consider Plaintiff's left ankle injury as a severe impairment; (2) failing to properly consider Plaintiff's credibility; and (3) failing to properly consider and weigh medical source opinions.

## DISCUSSION

**A.    Left Ankle Injury**

Plaintiff asserts that the ALJ erred by failing to discuss Plaintiff's left ankle injury and failing to find it severe at step two. ECF No. 12 at 18-20.

Step two is "a de minimis screening device [used] to dispose of groundless

claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. § 404.1521(a). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1279. "[T]he ALJ must consider the combined effect of all of the claimant's impairments on her ability to function without regard to whether each alone was sufficiently severe." *Id*. at 1290.

Here, Plaintiff alleged a left ankle injury as one of the physical conditions that limited her ability to work. Tr. 258. Despite this allegation, the ALJ did not consider Plaintiff's ankle injury anywhere in his step two determination. Tr. 19-22. In fact, the ALJ's only mention of Plaintiff's ankle throughout his decision is in his summary of her testimony at the October 30, 2013, hearing. Tr. 25. This testimony was rejected as less than fully credible. *Id*.

The medical evidence shows that Plaintiff twisted her left ankle on January 13, 2003. Tr. 459. At the time, Plaintiff was diagnosed with a grade 2 sprain of the left ankle and x-rays were reported as normal. *Id*. An MRI showed a "[s]mall abnormal fluid collection adjacent to palpable painful lump along lateral ankle, possibly related to calcaneofibular ligament disruption or peroneal reticulum tear." *Id*. In April of 2003, Plaintiff was diagnosed with chronic ligament laxity in her left ankle and surgical repair was recommended. *Id*. Plaintiff's first surgery was done in May of 2003. *Id*. In April of 2004, after continued complaints of left ankle pain, Plaintiff was diagnosed with scarring in the Achilles tendon and was told her pain could be repaired with surgery. *Id*. In May 2004, Plaintiff was diagnosed with a sural nerve entrapment and given injections, which provided her "excellent pain relief for about six hours." *Id*. Plaintiff underwent her second ankle surgery on August 16, 2004, and reported that the position of her foot improved allowing her to walk straight, but she did not experience significant pain

relief. Tr. 460. She then received an additional injection, which provided some relief for about two months. *Id*. Plaintiff returned to work in September of 2004 and continued to receive injections. *Id*.

In a physical evaluation on December 2, 2005, Plaintiff had a limited range of motion in all four directions in the left ankle,[1] the ligaments were stable to anterior drawer and talar tilt stress tests, there was mild tenderness at the plantar heel pad, and no tenderness along the plantar fascial insertion. Tr. 463. Strength testing was normal except for some lateral deviation with weakness of the lateral ankle area estimated at 4/5. Tr. 464. Sensation testing revealed decreased sensation to pinprick in the forefoot beginning at the ankle and involving the sole and dorsum of the foot and toes. Tr. 464-465. She had normal sensation in the heel region and along the Achilles tendon. Tr. 465. Her deep tendon reflexes were normal with some reported discomfort on the left with the Achilles tendon assessment. *Id*. Routine and tandem ambulation was performed in "an adequate fashion," with a mild decreased stance phase during routine ambulation, but not during tandem walking. *Id*. Following the evaluation, it was determined that the lateral ligaments had been adequately stabilized, there was some residual tenderness of the ligaments, there was evidence of tendinitis in the posterior tibial and peroneal tendons, and mild Achilles tendinitis was present. *Id*. Additionally, Plaintiff was determined to have morton's neuroma in the left 2nd web space and planar heel-pad inflammation that was unrelated to the original left ankle injury. *Id*. It was determined that Plaintiff's left foot was fixed and stable and Plaintiff had reached maximum medical improvement as of the December 5, 2005,

---

[1] *See* 1 DAVID A. MORTON, III, M.D., SOCIAL SECURITY DISABILITY MEDICAL TESTS 59-60 (1st ed. 2015) (the Court relied on this section to compare the December 2, 2005, range of motion results with the section's "normal" range of motion results to determine that Plaintiff exhibited a reduced range of motion).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 7

evaluation. Tr. 468. It was determined that Plaintiff had a 9% impairment of the left lower extremity due to the left ankle injury. Tr. 469-470.

On October 2, 2006, Plaintiff presented to Roy Gondo, M.D., with complaints of left ankle pain. Tr. 429. A physical examination revealed that the ankle was tender to the touch, but no greater laxity in the ankle was noted. Tr. 430. On February 13, 2007, Plaintiff returned to Dr. Gondo with complaints of left ankle pain and difficulty walking. Tr. 422. Dr. Gondo noted that Plaintiff was limping. *Id*. On March 23, 2007, Plaintiff again presented to Dr. Gondo with complaints of left ankle pain and reported that she occasionally used crutches when her ankle pain worsened. Tr. 421. Dr. Gondo's physical evaluation did not include any mention of Plaintiff's gait or ankle testing. *Id*. On March 26, 2007, Plaintiff again returned to Dr. Gondo with complaints of left ankle pain. Tr. 420. Plaintiff was unable to walk for her physical examination. *Id*. On April 12, 2007, Plaintiff presented to Dr. Gondo with complaints of left ankle pain, and reported she was doing TENS type treatment. Tr. 419. Dr. Gondo noted that her gait was antalgic favoring her left side. *Id*.

On June 23, 2008, a physical evaluation revealed a gait cycle favoring the left foot. Tr. 529. Plaintiff was unable to walk on hells and toes. Tr. 531. Plaintiff was only able to perform a partial squat due to pull on the left Achilles. Tr. 529. Plaintiff had weakness with inversion of the left ankle, there was no breakaway weakness, and eversion on the left was equal to the right. Tr. 530. There was little motion in the left ankle in the way of inversion and eversion. *Id*. Plaintiff's circumference of the left calf and ankle were less than one centimeter smaller on the left compared to the right. *Id*. A neurological examination was normal expect for a slight decrease in sensation anterior to the left lateral malleolus in the area of the past surgical incision. *Id*. Plaintiff was diagnosed with a left ankle sprain and chronic ligament laxity. Tr. 531.

A September 16, 2009, physical evaluation revealed a slight antalgic gait on

ORDER GRANTING PLAINTIFF'S MOTION . . . - 8

the left side. Tr. 502. Plaintiff did not want to try to walk on her heels or toes and was able to perform a somewhat faltering tandem gait. *Id*. Her deep tendon reflexes were normal. *Id*. Sensory testing revealed a slight global reduction on the left side and nothing over the dorsum of the left foot. Tr. 503. Motor examination showed a give-way quality to the effect in the ankle, dorsiflexion and inversion, and in all major muscle groups. *Id*. The evaluators, Barry L. Lichter, M.D., and Richard E. Hall, M.D., opined that Plaintiff was "capable of working in some sedentary capacity where she would be seated at a desk due to the alleged pain that she is having in her left lower leg." Tr. 533.

On September 1, 2011, Plaintiff's physical therapist noted a disturbed gait due to left foot and ankle pain. Tr. 630.

On March 13, 2012, Plaintiff underwent a physical capacity evaluation. Tr. 885-903. An evaluation of the ankle showed a limited range of motion in all four directions in the left ankle. Tr. 883. The evaluator noted that based on these results, Plaintiff would expect gait deviations and limitations in below waist activities. Tr. 884.

Defendant argues that (1) the mere existence of an impairment is insufficient proof of a disability, citing *Matthews v. Shalala*, 10F.3d 678, 680 (9th Cir. 1993), and (2) the evidence supporting a step two severe impairment predates Plaintiff's amended onset date of June 20, 2011. ECF No. 17 at 18. The Court agrees that the mere existence of an impairment is insufficient proof of a disability. However, disability is not the question raised at step two. Step two simply establishes whether or not Plaintiff has a severe impairment. There are severe impairments that do not equate to disability. Additionally, even if the impairment was not considered severe, the ALJ was required to consider the combined effect of all Plaintiff's impairments, without regard to whether each alone was sufficiently severe in forming the residual functional capacity. *See Smolen*, 80 F.3d at 1290. This Court finds that the ALJ's mention of Plaintiff's left ankle injury as a part of

ORDER GRANTING PLAINTIFF'S MOTION . . . - 9

the summary of her testimony is not sufficient consideration of the impairment in light of the medical records addressed above.

As for Defendant's second argument, that the evidence predates Plaintiff's amended onset date, the ALJ's decision makes the onset date unclear.  On the first page of the decision, the ALJ stated that "[w]hile the discussion below may refer to evidence dated prior to the amended alleged onset date of disability, these reference are merely used to establish the longitudinal picture of the claimant's medical history, and do not constitute an implied reopening of any previous claim."  Tr. 17.  This statement implies that the relevant time period spans from the proposed amended date of onset, June 20, 2011, to the date Plaintiff was last insured, June 30, 2012.  However, in his findings, the ALJ consistently refers to the relevant time period as March 2, 2005, the originally alleged date of onset, through June 30, 2012, the date last insured.  Tr. 19, 36.  Therefore, while the ALJ may have intended his decision control Plaintiff's eligibility from June 20, 2011, to June 30, 2012, he specifically addressed Plaintiff's eligibility from March 2, 2005, to June 30, 2012.  By doing so, the ALJ placed the medical evidence predating June 20, 2011, back on the table for consideration as relevant evidence.  Therefore, there is sufficient evidence for Plaintiff's ankle impairment to be considered severe at step two.

Even if the relevant time period was limited from June 20, 2011, to June 30, 2012, and the evidence prior to June 20, 2011, was viewed solely for the purpose of a longitudinal picture, there is sufficient evidence that Plaintiff's ankle injury continued to cause more than a minimal effect on her functional abilities, specifically walking and below the waist activities.

Therefore, the ALJ's failure to discuss Plaintiff's ankle injury at step two was an error.  The case is thereby remanded for additional proceedings in which the ALJ will clearly define the relevant time period, both in the discussion text of his decision and in his findings, and the ALJ will make a new step two

determination addressing Plaintiff's left ankle impairment.

**B.     Credibility**

Plaintiff contests the ALJ's adverse credibility determination in this case. ECF No. 12 at 5-13.

Considering a new step two determination is necessary to properly consider the limitation involving Plaintiff's left ankle and one of the reasons the ALJ provided for finding Plaintiff less than fully credible was her reported need for an assistance device while walking, the ALJ is instructed to make a new assessment as to whether Plaintiff's subjective symptom statements are consistent with the record as a whole.[2]

**C.     Medical Source Opinions**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinion expressed by Sophie Gomez, M.D., and Paula Hemp, OTR/L, CWCE.[3] ECF No. 12 at 13-18.

Considering a new step two determination is necessary, it is likely that once all of Plaintiff's impairments are considered, a new residual functional capacity

---

[2]On March 16, 2016, S.S.R. 16-3p, "Evaluation of Symptoms in Disability Claims," became effective, eliminating the term "credibility" from the Social Security Administration's policy, and clarifying "adjudicators will not assess an individual's overall character or truthfulness." The ALJ's November 2013 decision came more than two years before S.S.R. 16-3p. Therefore, he could not have employed the new S.S.R. Nevertheless, upon remand, the ALJ should address S.S.R. 16-3p as part of the review regarding Plaintiff's alleged symptoms.

[3]The Court notes that while the ALJ rejected Therapist Hemp's opinion of Plaintiff's functional abilities, he did not question her objective test results, specifically the range of motion testing that supports the remand for a new step two determination.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 11

assessment will be necessary. In doing so, the ALJ is instructed to readdress the medical source opinions in the record in light of all of Plaintiff's impairments.

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990). *See also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to define the relevant time period and to address Plaintiff's left ankle injury at step two. Following a new step two determination, the ALJ is instructed to determine whether Plaintiff's subjective symptom statements are consistent with the record as a whole and make a new residual functional capacity determination considering all of Plaintiff's impairments. The ALJ will also need to supplement the record with any outstanding medical evidence.

**CONCLUSION**

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED August 8, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE